The next case to be heard this morning is the Tandem case No. 194335, Utica Mutual v. Century Indemnity. Mr. Hacker? Good morning, Your Honors, and may it please the Court. In Fireman's Fund, this Court addressed a different chapter in the same dispute between Utica and its reinsurers over reinsurance for its liabilities In this case, the same district court made a version of the same mistake it made in Fireman's Fund. It did not correctly apply controlling law to unambiguous contracts, and thereby submitted a dispute to a jury that a jury never should have heard. The contract I'd like to focus on this morning is the 2007 Coverage-in-Place settlement agreement that Judges Jacobs and Judge Carney have already asked about. That agreement, as you know, resolved a massive coverage dispute between Goulds and Utica in part by declaring unambiguously that Utica's 1973 and 1974 umbrella policy limits would be $25 million including defense expenses. And you can see that at JA-2202, where it lays out the limits for the policies. Despite that agreement, Utica turned around and billed its reinsurers for more than $13 million in defense expenses above $25 million for each of the 1973 and 1974 policies. In playing by two sets of rules between on the one hand making payments to Goulds and on the other hand billing reinsurers for the same payments, Utica violated its duty to follow its own liability and settlements in its reinsurance allocations. Let me start by briefly summarizing the Coverage-in-Place settlement. As the court may know from its Clearwater decision, the core of that dispute was whether certain of Utica's primary policies had aggregate limits. Goulds said there were no aggregate limits and so it was claiming all of its losses essentially under the no aggregate primaries, resulting in effectively unlimited insurance. Utica on the other hand, while the dispute was pending, said yes there are aggregate limits on those policies so it was taking the payments and exhausting the primaries and then applying payments to the umbrellas on top of those primaries. How did the parties resolve that? In the settlement, they entered three critical contractual agreements. One was that they decided together that the Utica primaries do have aggregate limits and are exhausted, which was of course a big win for Utica to protect its primaries. In exchange, Goulds, Utica agreed to grant Goulds fresh unimpaired limits in the umbrellas. You see that at 2202 of the joint appendix. Goulds or Utica agreed that the umbrella policies would be unimpaired and that's a huge win for Goulds because it means that money Utica has already paid. Remember how I said that they were treating the primaries as exhausted and then paying under the umbrellas? What that critical unimpaired provision means is that the money that Utica had previously paid goes nowhere. It doesn't go to any policy, it just remains the responsibility of Utica. That's the sense in which Utica agreed to those prior payments. With respect to the 75 facultative certificate, you're not simply challenging whether you have to pay defense in addition to limits. You're saying that you don't have to pay the five million dollars at all. That's correct. That is our secondary argument. We don't think that the defense, the key argument here I think on appeal is... Why is it a secondary argument? Because even if your position is you're not going to pay anything. You're right. I agree with that. It's a trial argument though is the issue. The way it's presented on appeal is that we were disabled, not allowed to make a critical argument to rebut Utica's main argument for why Century was responsible for the 1975 facultative certificate. And so our argument on appeal is simply that there should be a retrial on that issue. We don't have a judgment as a matter of law argument on that. The judgment as a matter of law argument is definitely focused on the defense expenses. Utica's charging of defense expenses outside the limits prescribed by... You would be seeking a trial on whether it is R&Q that would have that obligation and not your predecessor. But I'm looking at the confidential settlement and release. Am I able to discuss this or is this still confidential? But between INA and R&Q, and that agreement says that R&Q is the reinsurer, but except as previously agreed and except for contracts identified in Exhibit 8. So for agreements identified in Exhibit 8, it would seem that INA is the reinsurer. And if I look at Exhibit 8, which is in the joint appendix at page 2632, and I know this is head spinning, but I'm sure you've been there before, it says that it identifies all years of coverage under FC 13257 and prior that previously were INA and post-sale would be INA century. And it looks like this 75 certificate, which is numbered FRC 05441 is indeed one of the things covered by Exhibit 8. And therefore, your client is stuck with it. So two answers, if I may, Your Honor. First of all, I don't believe this argument was presented below either in pleadings or before the jury or an argument about that responsibility. It's exactly the kind of thing that we would have been able to join issue on below had the court allowed us to even make an argument that says we are not responsible for to the extent the jury finds that INA re is the party that issued the certificate, we are not responsible. Then presumably, Utica would have come back and made this argument and we would have joined issue about the meaning of Exhibit 8. The second point my understanding is, and I may be not exactly accurate in this, but my understanding is what Exhibit 8 is doing is talking about an agreement to indemnify for losses under certain policies. It's not actually saying that century is the successor to INA's liability for this particular certificate. I may not have that exactly right. I'm sorry. This would be a factual issue. And whole issue was taken off the table by the courts in limine ruling, right? Yes, it's at least in part a factual issue. And now it's possible if the parties joined issue on Exhibit 8. And I won't dispute that a contract can be construed as a matter of law, but this just wasn't raised really below at all. And would you just outline how the successor corporation issue for the 1975 certificate relates to the other liability issues that the court ruled on? So, yeah, do you understand? Right now, so I think I understand. I mean, the 1975 certificate as Judge Jacobs initial question presupposed is a, if we were to prevail on that argument, you know, after and persuade the jury that we were not responsible for the 1975 certificate or not responsible for the liabilities that were issued under it, then we would have no liability, including for the indemnification component, the 5 million. So that's, that is, it is, it is a complete win, if you will, under the 1975 certificate. But it's, but it's categorically distinct from the argument that we are not responsible for defense expenses exceeding the 5 million dollar indemnification because the settlement agreement, the coverage in place settlement agreement explicitly says that the liability, the limits of the, of the umbrella policies are defense inclusive. So if we were to agree with you as the effect of the 2007 agreement, the successor liability really is superfluous. No, that's, and I think that with respect, Your Honor, that's what Judge Jacobs was getting at. He's right about that. If we were to prevail on the 2007 settlement agreement, it would mean we have no liability for defense expenses beyond what was agreed to in the settlement agreement. But the successor issue is that we have would be that we have no liability at all under the 1975 certificate. Oh, I see. That liability goes to R&Q. So we've already paid 5 million under both certificates. And we, if we were to prevail on the successor argument, we would be entitled to that 5 million back. I see. Okay. Thank you for clarifying. Thank you for your argument. Thank you. All right. We will hear rebuttal. Thank you, Sid Ahmed for Appellee Utica. Most of the arguments you just heard sound like closing arguments from the trial. We don't agree with the version of events that Centuries Council has laid out. And I think you have to start first with what the appeal really is about, which is the legal principles that govern. At regard, all of the arguments Centuries making require the court to adopt a brand new rule under New York law. I'm sorry, I'm going to interrupt you. Oh, I'm mistaken about the clock. Okay. All of the arguments Centuries making as it relates to the settlement require the court to adopt and create a brand new rule under New York law. Namely, that there's a per se categorical requirement that whenever there's a settlement between an insurance company and its policyholder, the insurance company cannot change the allocation at all when it bills its reinsurers. That is not the law in New York. The sole support that Century has is the all state decision, which is from the first department. What all states said was when there's a difference between a pre-settlement assessment of the risk and a post-settlement allocation, the court under the appropriate circumstances can look at that and determine if the allocation is appropriate. However, the New York Court of Appeals and even the all state decision does not stand for the categorical rule Century is advocating for. What the New York Court of Appeals has said in the USFMG case that was after all states is that all that you need to show under an allocation is that it was reasonable. And the court also made clear that if there are multiple reasonable choices, Utica, the cedent is entitled to select between them. This argument that Century is advancing here that you need to follow the allocation is the same one they made in the USFMG case. And the Court of Appeals tellingly did not adopt that argument. So unless the court is willing to create that law when the USFMG court did not, the criticisms that Century has about the allocation legally are irrelevant. Moreover, factually what Century is saying is incorrect. All of these issues were vetted in the trial because the district judge correctly found that there were disputes about how the settlement worked. I'll give you a couple of examples. The first one is Century's interpretation of the settlement. Century's position is that the settlement agreement had unimpaired limits, which did not account for, according to Century, Utica's prior payments under the 1970 umbrella. That's wrong. The settlement agreement itself specifically says, this is joint appendix 2187, it acknowledges that before the execution date, Utica made payments under the umbrella policies. And the significance of that, and these are the kinds of issues that were explored at trial, the significance of that is it's not the case that the settlement caps Utica's liability at $25 million under 73 only. Instead, what the settlement agreement is recognizing is that Utica made certain payments before it entered into the settlement, and it continued to make payments after. And with respect to how Utica allocated those payments, that under USF&G is a function of whether what Utica did was reasonable. The reasonableness of an allocation, certainly with disputed facts like the ones we have here about what was paid, when it was paid, and why it was paid are quintessential fact issues, which were vetted during the trial. And the arguments you're hearing from Century are the same ones they tried in front of the jury. The big difference between this case and the Fireman's Fund decision is that Fireman's Fund was based on not these kind of allocation disputes, but instead this court's conclusion that the certificate in that case issued by the Fireman's Fund had follow form language. And based on that language, the reinsured policy terms were incorporated into the certificate. And what this court found was that follow the fortune does not change the reinsurance terms. That's not what we're dealing with here. In contrast, this is a quintessential allocation dispute. If you look at the Rule 50 motion that Century filed, throughout its papers, including in the argument heading, they challenged Utica's based on the settlement. And if you read the Fireman's Fund decision, the court specifically says, notwithstanding any holding in Fireman's Fund, reinsurers are not entitled to de novo review of allocations. Let me ask you a question on a different subject. And I apologize if you covered this because there was an interval there where I lost contact with the world. I am back. Your client sued R&Q for the very coverage that you are now seeking from Central, correct? There was no suit against R&Q, and that was not a part of any proceeding. But you made a demand to R&Q. We did. We did. I was just pointing out didn't go into litigation, but you're correct. We did. But it went into arbitration. It was not a part of the arbitration. Utica attempted to have it added. Was it alleged as a claim in the arbitration? No, I believe, because the arbitration panel did not allow the claim to be added. But I agree, Your Honor, Utica did make that assertion to R&Q. I'm not quibbling with that. Has that claim with R&Q, has your client's claim with R&Q on this facultative certificate or any facultative certificate resulted in a settlement? No. Well, let me, oh, I see what you're asking. No settlement based on this particular certificate for 1975. What happened was in the midst of the arbitration, when Utica learned about this information and at the time believed this could have been R&Q's responsibility, it asserted the claim. The arbitration panel did not allow that claim to come within the arbitration. The parties then proceeded. There was a ruling on the arbitration, in the arbitration, about all of the other certificates, which everybody agrees was R&Q's responsibility. Based on that ruling, there was a resolution and what needed to be paid under those certificates based on the arbitration panel rulings on those certificates. But there was not a settlement. But you did not pursue R&Q with respect to this facultative certificate. That's true, Your Honor, because we subsequently learned that this is Century's responsibility. And that's why we included that claim from the outset in this case as a part of the litigation against Century. Did you give R&Q a release with respect to the 1975 facultative certificate? No, Your Honor. There was no release addressing this certificate. The matter with R&Q was confined to the agreements that were at issue in the arbitration, and this was not one of those. Thank you. Turning next to this. I'm sorry. So, I understand your adversary to be arguing that you're taking inconsistent positions with regard to the 2007 settlement, and that you agreed to treat the 1973 umbrella policy in the 1974 as expense-inclusive in that settlement. And yet, you turned around and billed the reinsurers after the settlement on an expense-exclusive basis. What's your response to that criticism? It's not well-founded, because the predicate for it is an inconsistency that does not exist. For you to accept Century's argument, one has to conclude that the only and if that was the case, the liability under the settlement for that policy could be considered within limits, but it's not. We know, and there's ample trial evidence for this cited in our brief, we know there were millions of dollars paid before the settlement went into effect. They were paid and allocated under the 1973 policy, and they were then accounted for under the 1973 policy. So, by the time you get to the settlement and you have $25 million referenced for 1973, you can't confine the payments to that period, because both Utica and Goulds recognized there were millions paid prior to that. And you don't have to take our word for it and what happened at trial, the settlement agreement itself specifically recognizes it. Again, look at JA-2187. In that agreement, in one of the whereas clauses, when the parties are explaining how they got to where they did in the settlement, they specifically referenced that Utica, prior to execution of the settlement, made payments under the umbrella policy. But then how come they were deemed unimpaired in the settlement? The amounts that were deemed unimpaired were the limits that were in fact going to be paid, which is $25 million. So, Utica was agreeing to pay up to $25 million under the policy, and that limit, the $25 million limit was unimpaired. I'll give you another example. If you look at the later years, 1979-19... I'm sorry, Judge Radji, where are you? I think Judge Radji has a question. Yeah. I don't want to interrupt your answer, but as part of it, I'd also like you to address whether this issue was presented to the jury. I didn't see a jury charge in which the jury, in which it was suggested that they consider whether the disparate treatment of expenses in the settlement and the reinsurance evidence was evidence of bad faith. On the other hand, it did seem to me that the parties argued that to the jury. So, I'm trying to get a sense of whether this was fairly available for the jury to consider in making its bad faith decision. Sure. So, let me just finish my answer, and I'm going to pivot to this, and it does relate. Judge Jacobs, the issue about the unimpaired limits, if you look at the later 1970s policies and early 80s, those have an unimpaired limit of $48 million. Nobody's contending that those were in fact the limits under the policy. What the settlement is recognizing is these are the amounts we're going to set forth based on the party's agreement and the allocation that was agreed to, and that's what sentry challenged in the district court, and that's what the district judge found had factual issues, and all of these were vetted in terms of the reasonableness of the trial. To your question on how this issue was presented, a couple of things. There is a charge about consistency, and the district court correctly identified, based on the USF&G decision, that consistency is a factor, but it alone cannot make a settlement reasonable. That language is paraphrased, if not basically quoted, from the most recent Court of Appeals decision. So, that is addressed. To your question of could there be additional, were there additional instructions that get to some of Sentry's theories here, Sentry did not propose any other instructions on that point, and Sentry certainly is not that challenging on this appeal, the failure to include any other additional points. So, at the end of the day, I think it's not an issue. Am I right that it was argued by both sides, which would also suggest that it was an issue? Absolutely. It was the subject of intense testimony from fact witnesses, experts who dealt with the custom and practice on these issues, and it was a paramount consideration from Sentry in its opening and closing argument, the same kind of thing you heard from Sentry's counsel this morning. It was absolutely front and center for the jury to resolve. All right. Thank you very much. Your time has expired, Mr. Ahmed. Mr. Haq, you have three minutes of rebuttal. Thank you, Your Honors. To the extent anything I said earlier sounded like a closing argument, that just defines the problem here. When we're talking about what a contract means, these are not things that should have been submitted to the jury, and yet they were, and the Court erred in not construing the settlement agreement for itself and construing it accurately. On the question of the legal rules for following a settlement under New York law, the Allstate case unambiguously holds that you have to follow the settlement when an allocation is embedded in the settlement, and the issue in Allstate was whether or not the evidence showed that the settlement reflected a particular allocation. The Court said it did, and therefore it had to be followed. Here, it's even easier because the settlement says what the allocation is supposed to be. It's written right there in black and white on page 2202 of the joint appendix. USF&G didn't change that, Your Honors. USF&G reinforced the rule. The argument in USF&G was whether or not a settlement is a safe harbor for the reasonableness of an allocation, whether or not the seating can say, well, we reached the settlement, so we're going to do the allocation pursuant to the settlement, and the reinsurer can't say anything about that, and the Court rejected that argument. It's not enough. It's necessary to follow a settlement, but it's not sufficient because the settlement itself might be collusive and therefore unreasonable. That's the holding of USF&G. Here, and it's not just USF&G and Allstate, it's the fundamentals of reinsurance that were discussed in the prior argument that I don't think Mr. Ahmed is in any position to contest. Reinsurance is about accepting a share of the liability of the actual reinsured policy and the payments made under the policy. That's what reinsurance is, and you can see it in the certificate here, where in condition A of the certificate, it requires that the reinsurer, it says on page JA-1204, the liability of the reinsurer specified in item four of said declarations, which is the liability limits of the underlying policy, shall follow that of the company and accept as otherwise specifically provided herein, shall be subject in all respects to the terms and conditions of the company's policy. So, the certificate requires, by its terms, Utica to follow its settlement in assigning liability to the reinsurers. Finally, Mr. Ahmed makes the argument that the unimpaired provision only applies on a going-forward basis and not going backwards. The only thing he cites for that, Your Honors, is JA-2187, and I invite Your Honors to look at it. It's a preamble provision, it's only a preamble, where the parties agree that Utica had previously made these payments. That's certainly true. That was the dispute. How does it get resolved? It gets resolved at 2202 by the parties agreeing that, yes, there were payments, but those payments could not be credited against the umbrella policies. That's what unimpaired means, and so that's the sense in which Utica had to take those liabilities for If it were true that it was actually just taking the past payments and applying those to limits and then creating new limits, you'd be literally rewriting the umbrella policies, and we know that you can't do that under Fireman's Fund, Travelers, and a whole host of cases that hold that. That's one thing you certainly can't do. If those prior payments for defense and for fees were charged against the umbrella policies and defense was in addition to limits, then the limits would still be unimpaired. So your argument that the fact they were unimpaired means that there was no Well, except that the settlement itself says not only that they're unimpaired, but also that all payments of qualified expenses, which includes indemnity and defense, shall erode the limits. So it makes the limits defense-inclusive, and you can see that at 2202 and 2215. So certainly under the settlements, it's just unambiguous that defense payments erode the limits, and the limits that are we're not going to follow that agreement and instead are going to charge defense outside limits and basically shift the what is referred to as the part dollars that they had previously paid under the umbrellas under other umbrellas and shift those over to the 1973 and 1974 policies because the settlement prohibited that. Thank you very much. Thank you very much, advisement.